1064

## KUNHARDT v. BOWERS, Internal Revenue Collector.

District Court, S. D. New York.
April 21, 1928.

M. A. Willment, of New York City, for plaintiff.

Samuel C. Coleman, of New York City, for defendant.

WINSLOW, District Judge.

The issues of fact having duly come on to be tried by the court at a term of this court held for the trial of civil causes at law by the undersigned without a jury on the 22d day of November, 1927, and counsel for both parties having by stipulation agreed to try the case without a jury, and the allegations and proofs of the parties having been fully heard, now, after hearing M. A. Willment, of New York City, of counsel for the plaintiff, and Samuel C. Coleman, of New York, of counsel for the defendant, and due deliberation having been had, I decide and find as follows:

### Findings of Fact.

1. That the plaintiff, Mabel F. Kunhardt, is a citizen of the state of New York, residing in the borough of Manhattan, city and state of New York.

2. That the defendant, Frank K. Bowers, is the duly appointed, qualified, and acting internal revenue collector for the Second district of New York, in the Southern district of New York.

3. That the plaintiff is the duly appointed and qualified executrix of the estate of Henry R. Kunhardt, late of the county and state of New York, deceased.

4. That said Henry R. Kunhardt died on October 25, 1923, a resident of the borough of Manhattan, city and state of New York, leaving a last will and testament which was duly admitted to probate by the Surrogates' Court of the county of New York on or about the third day of December, 1923, and letters testamentary thereon were duly granted to the plaintiff.

5. That on or about March 22, 1924, plaintiff, as executrix of the will of Henry R. Kunhardt, deceased, filed with the defendant a federal estate tax return showing a total tax liability of $278.95.

6. That in Schedule E of said return the plaintiff stated that within two years prior to his death Henry R. Kunhardt, the decedent, had made a transfer of 2,400 shares of the capital stock of the Carpenter Steel Company, a New Jersey corporation, but claimed that said transfer was not made in contemplation of death or intended to take effect in possession or enjoyment at or after his death.

7. That said transfer was made on October 16, 1923, pursuant to an agreement dated on that date made between Henry R. Kunhardt, the decedent, party of the first part, and the Guaranty Trust Company of New York, as trustee, party of the second part. That said agreement recited as a consideration "the mutual covenants herein contained, and of other good and valuable consideration and of the sum of one dollar" paid to the decedent by the trust company.

8. That in and by said agreement decedent assigned to the Guaranty Trust Company 2,400 shares of the capital stock of Carpenter Steel Company of Reading, Pa., to hold the same, to collect the income and profits, and, after deducting necessary expenses, to pay the same as received to Mabel F. Kunhardt, plaintiff herein, during her natural life, and, upon her death, to divide the principal of said trust into three equal separate parts for the benefit of decedent's three sons, to pay the income to each, and, upon the death of each, to pay the principal to such person or persons in such amounts as each of said sons should appoint by will.

9. That said agreement further provided, in part, as follows:

"2. At all times during the lifetime of the

party of the first part, the selection, retention, purchase and sale of investments and reinvestments by the trustee shall be subject to his direction. * * "

"8. The party of the first part shall have the power from time to time, by instrument in writing, to modify this indenture and the trusts, estates and interests hereby created."

"9. The party of the first part hereby reserves the privilege of increasing the principal of the trust fund from time to time by adding thereto property and securities which the trustee shall receive, hold, manage, invest and reinvest in the same manner as above specified in respect of the property forming the original trust fund; and furthermore, the party of the first part shall have the right at any time and from time to time to withdraw any of said shares or securities composing the principal of the trusts herein created from the operation thereof without being obliged to purchase the same or replace the security or securities so withdrawn."

That by paragraph 10 of said agreement, said trustee was authorized in substance to vote by proxy upon all stocks and other securities held by it from time to time; to join with other stockholders in the pooling of stock for the sale or other disposition thereof; to exchange the securities; to consent to reorganization, consolidation, or merger, and the sale or lease of the property, and to exchange securities held by it for securities issued in connection with such reorganization, consolidation, or merger; to pay all assessments; to exercise any option for conversion; to take advantage of rights to subscribe for additional stock; and to exercise in respect of all stocks or bonds such rights, powers, and privileges as may be exercised by any persons owning similar property in his own right. Said paragraph 10 closed with the following sentence: "The provisions of this paragraph are subject to the direction, control and approval of the party of the first part and after his death, of the respective beneficiaries for the time being."

10. That the Commissioner of Internal Revenue, as provided by law, made a review and audit of said return and found that the executrix, plaintiff herein, had not included in the gross estate of the decedent the sum of $312,000, being the value of the said 2,400 shares of stock of the Carpenter Steel Company, and determined the total federal estate tax liability of the plaintiff to be the sum of $9,515.84, after including the said sum of $312,000 as part of the gross estate of the decedent. And said Commissioner determin-

ed that said transfer of the same was made in contemplation of death, and that it was also intended to take effect in possession or enjoyment at or after decedent's death, and that an additional federal estate tax was due from the estate of said decedent in the sum of $9,236.88.

11. That thereafter the plaintiff duly applied to the Commissioner of Internal Revenue for a reaudit of said return and for a hearing thereon specifying, in accordance with the regulations of the Treasury Department, in writing the grounds relied upon therefor; and that such rehearing was thereafter had and the said audit theretofore made was affirmed.

12. That, under the federal estate tax law, the tax was due and payable one year after the death of said decedent, and, in case the same were not paid within eighteen months thereafter, interest at the rate of six per cent. per annum from the expiration of one year after such death was to be added as a part of the tax until the same was paid.

13. That, in accordance with the provisions of the Revenue Act of 1921, the plaintiff, on behalf of the estate of said decedent, was required to pay and did pay to the defendant as collector as aforesaid on or about March 31, 1925, the said sum of $9,236.88, the amount of the additional tax assessed upon said audit and review.

14. That, at the time of said payment, plaintiff delivered to the defendant a formal protest in writing.

15. That on or about March 31, 1925, the plaintiff filed with the defendant a claim for refund in the sum of $9,236.88 on the ground that the transfer of 2,400 shares of stock of the Carpenter Steel Company by decedent in his lifetime was made in good faith and not in contemplation of death nor to take effect at or after his death, and that it was not made with any intent to evade the payment of any taxes thereon.

16. That upon reaudit, after a hearing upon said claim for refund, the Commissioner of Internal Revenue rejected said claim for refund in its entirety.

17. That the decedent, at the time of his death, was 63 years of age.

18. That on October 16, 1925, at or about the same time the decedent executed said agreement or deed of trust with the Guaranty Trust Company, decedent executed his last will and testament by which he disposed of all the rest, residue, and remainder of his property, excepting the 2,400 shares of Car-

penter Steel Company stock transferred and assigned by said agreement.

19. That said Henry R. Kunhardt, the decedent, had, prior to the year 1918, been actively engaged in business as a partner in an exporting and importing house; that in 1918 the business was incorporated; that in 1918 he gave up his interest in the business entirely; and that he had no other important business interests.

20. That the said Henry R. Kunhardt, decedent, in the two or three years before his death had had frequent attacks of indigestion, and was suffering from rheumatism. He had two very severe attacks of indigestion, one in 1918 and one in 1920 or 1921, and a fainting spell at Atlantic City.

21. That Dr. Robert L. Hutton attended decedent from September, 1919, until his death, and during that period told him he had hardening of the arteries.

22. That in 1919 he was under Dr. Hutton's care, and visited the doctor every two weeks.

23. That decedent for several years before his death had frequent attacks of indigestion; that in 1920 or 1921 he had a severe attack of indigestion on the train to California; that it was an acute attack.

24. That in the summer of 1921 at Lake Placid he burst a blood vessel in his left eye; that it affected his sight intermittently, but he could always read. The bursting was due to thrombosis of the eye, a condition associated with his condition of hardening of the arteries, or arteriosclerosis.

25. That he consulted various doctors from time to time in the few years preceding his death in New York, and on one occasion in Baltimore.

26. That in the few years preceding his death he visited a throat specialist from time to time to have his throat sprayed.

27. That decedent's wife knew that he was ill three months before his death.

28. That on his visits to Doctor Hutton the doctor always examined his heart.

29. That at one time the doctor wrote down in his records, "look out for myocarditis."

30. That myocarditis is an inflammation of the muscles of the heart.

31. That Dr. Hutton always took decedent's blood pressure and listened to his heart through the stethoscope.

32. That in addition to arteriosclerosis the decedent had an involvement of the coronary artery; the artery that supplies blood to the heart muscle itself.

33. That on October 19, 1923, said Henry R. Kunhardt had an attack of angina pectoris.

34. That on the 21st or 22d days of October, 1923, he had a second attack of angina pectoris of which he died on October 25, 1923.

35. That the death certificate of the health department of the city of New York, signed by Dr. Robert L. Hutton, shows that Dr. Hutton had attended said Henry R. Kunhardt from September 26, 1919, to October 25, 1923; that the cause of death was angina pectoris; and that its duration was four years.

36. That both the agreement or deed of trust above mentioned was executed and delivered by decedent, and the last will and testament of the decedent was published and declared by him about the same time on October 16, 1923, nine days before his death.

37. That the said Henry R. Kunhardt spent the winter of 1921 in California where he played golf nearly every day.

38. In April, 1922, all the stockholders of the Carpenter steel Company had agreed to sell their stock to a syndicate; the transaction to be closed by the first of July.

39. The said Henry R. Kunhardt would receive a very large sum of money from the sale of said stock and desired to go away from the city before the transaction was closed and travel with his wife, and desired that some arrangement should be made whereby the money from the sale of the stock could be received during his absence and invested while he was away.

40. That as a result of this desire he consulted his attorney who advised him to execute a deed of trust transferring the said stock to a trustee.

41. That several drafts of such a trust deed were prepared between April, 1922, and June, 1922.

42. That in the month of June, 1922, said Henry R. Kunhardt actually executed a trust deed, but did not deliver it to the trustee, as the said sale of stock had fallen through; the purchasers having defaulted.

43. That said Henry R. Kunhardt was at Lake Placid during the summer of 1922.

44. That on his return from Lake Placid in September, 1922, he again took up the question of executing the trust deed, but due to certain matrimonial difficulties of his son's

he felt he ought not execute it until those difficulties had been adjusted.

45. That the said Henry R. Kunhardt spent the summer of 1923 at Lake George where he paddled a canoe, motored, and walked, returning to the city of New York in the latter part of September, 1923.

46. On his return to the city of New York from Lake George, his son's difficulties having been terminated, he told his attorney that he was able to decide definitely upon the form of the deed of trust, and directed him to prepare it for execution.

47. That after his return from Lake George in September, 1923, the said Henry R. Kunhardt started to make arrangements to spend the winter of 1923–1924 at Nassau, and engaged hotel accommodations there.

48. That the said Henry R. Kunhardt after his return from Lake George in 1923 planned to take a trip around the world in 1924–1925.

49. That in August or September, 1923, the said Henry R. Kunhardt took a lease on a house at Lake George for five years.

50. That on December 26, 1922, the said Henry R. Kunhardt took a lease of an apartment to be built on the roof of an apartment house then in course of construction.

51. That the said lease was for a period of five years from October 1, 1923, and that the said apartment was to be altered in accordance with instructions to be given by the said Henry R. Kunhardt.

52. That the said Henry R. Kunhardt took the blueprints of the said apartment with him to a lawyer, and went over them and changed them and sent them back to the architect.

53. That on the said Henry R. Kunhardt's return from Lake George in September, 1923, he went every day to the said building to see how the work was coming on.

54. That said lease on the said apartment to be built on the roof of the said apartment house contained a provision giving the said Henry R. Kunhardt the option of renewing the same for five years after the expiration thereof.

55. That after the said Henry R. Kunhardt returned from Lake George in Sepber, 1923, he bought a special desk for use by himself in the said apartment.

56. That the said Henry R. Kunhardt after the transfer of the said 2,400 shares of stock of the Carpenter Steel Company retained 600 shares of the said stock, stating to his wife that this 600 shares, together with 600 shares of stock she owned, would enable them to invest in a small place in the country if they wanted to.

57. That between the end of September and the 16th of October forms of the trust deed were prepared, and on the 16th day of October the said trust deed as prepared in final form was executed and acknowledged by Henry R. Kunhardt, and delivered to the Guaranty Trust Company, the trustee named therein.

58. That in and by said trust deed so delivered on the 16th day of October, 1923, the said 2,400 shares of Carpenter Steel Company stock were delivered to the Guaranty Trust Company as trustee, for the purposes in said trust deed set forth.

59. That the total value of decedent's gross estate at the date of his death on October 25, 1923, was the sum of $407,551.75.

60. That the value of the 2,400 shares of Carpenter Steel Company stock transferred by the decedent on October 16, 1925, under said agreement to the Guaranty Trust Company was at the date of decedent's death the sum of $312,000.

61. That said shares were a material part of decedent's property, and said transfer was in the nature of a final disposition or distribution thereof made by the decedent within two years prior to his death, without any consideration in money or money's worth.

62. That said transfer was made in contemplation of death.

63. That there is no material relevant or competent evidence to overcome the presumption raised by section 402 (c) of the Revenue Act of 1921 (42 Stat. 278) that said transfer was made in contemplation of death, or to show the contrary.

64. That under the provisions of paragraph 2 of said trust agreement or deed of trust, said Henry R. Kunhardt reserved to himself, during his lifetime, the selection, retention, purchase, and sale of investments and reinvestments, and thereby reserved to himself the control of the stock so transferred until his death.

65. That under paragraph 8 of said agreement decedent reserved the right to modify the trusts, estates, and interests thereby created, by which provisions he reserved the power to substitute himself for the life beneficiary.

66. That under paragraph 9 of said trust agreement said Henry R. Kunhardt reserved the right at any time and from time to time to withdraw any of the shares or securities.

composing the principal of the trusts therein created from the operation thereof without being obliged to purchase the same or replace the security or securities so withdrawn, and thereby, in effect, reserved the right to revoke and terminate said trust agreement.

67. That in and by paragraph 10 of said agreement said Henry R. Kunhardt reserved, in substance, the right to vote on the stock transferred or other securities which might be substituted therefor, and to control the sale or other disposition of the same until his death. That thereby he reserved to himself, in effect, the absolute dominion and control of the securities so transferred.

68. That the trust so created with the reservations aforesaid was made in contemplation of death, and the transfer so made was intended to take effect in possession or enjoyment at or after his death within the meaning of section 402 (c) of the Revenue Act of 1921.

69. That on the same day that the decedent executed the deed in question his wife executed a similar deed of trust, similar in every respect to the one the decedent executed; except that, where she was named as the beneficiary in his deed of trust, he was named as the beneficiary in hers.

70. That the Commissioner of Internal Revenue lawfully and properly included the value of said 2,400 shares of Carpenter Steel Company stock so transferred, to wit, the sum of $312,000, their value at the date of decedent's death, in the decedent's gross estate.

71. That the additional tax imposed and assessed by said Commissioner of Internal Revenue in the sum of $9,236.88 upon the transfer of decedent's net estate was lawfully imposed, assessed, and collected by said Commissioner.

72. That plaintiff was lawfully and properly required to pay to the defendant the additional sum of $9,236.88 for the federal estate tax upon the estate of Henry R. Kunhardt, deceased.

### Conclusions of Law.

1. That this court has jurisdiction of the parties and of the subject-matter of this action.

2. That the provisions of the Revenue Act of 1921 (42 Stat. 227 to 321), and more particularly the provisions relating to the federal estate tax in said act, sections 400 to 411, both inclusive (42 Stat. 227 to 284, inclusive), are applicable to the facts in this case, and govern and control the questions involved in this action.

3. That the transfer of 2,400 shares of the Carpenter Steel Company by the decedent on October 16, 1923, under the deed of trust dated on that day and made by him with the Guaranty Trust Company was made in contemplation of death within the meaning of section 402 (c) of said Revenue Act of 1921.

4. That the plaintiff has failed to overcome the presumption raised by section 402 (c) of the Revenue Act of 1921, that said transfer was made in contemplation of death, or to show the contrary.

5. That said transfer of 2,400 shares of the Carpenter Steel Company was made and intended to take effect in possession or enjoyment at or after decedent's death, and was not a bona fide sale for a fair consideration in money or money's worth within the meaning of section 402 (c) of the Revenue Act of 1921.

6. That the Commissioner of Internal Revenue lawfully and properly included the value of said 2,400 shares of Carpenter Steel Company stock so transferred, to wit, the sum of $312,000, their value at the date of decedent's gross estate.

7. That the sum of $9,236.88 is the correct amount of the additional federal estate tax which was due from the plaintiff to the defendant upon the transfer of the net estate of said Henry R. Kunhardt, and said additional estate tax was lawfully imposed, assessed, and collected by the Commissioner of Internal Revenue.

8. That plaintiff was lawfully and properly required to pay to the defendant an additional federal estate tax in the sum of $9,236.88 upon the net estate of Henry R. Kunhardt, deceased.

9. That there is no substantial, sufficient, or competent evidence in this case to warrant a judgment in favor of the plaintiff, and that plaintiff's complaint must be dismissed.

10. That upon the pleadings the evidence and the law in this case, judgment must be for the defendant, dismissing the plaintiff's complaint, with costs.

I accordingly direct judgment for the defendant, dismissing plaintiff's complaint, with costs which are hereby awarded to the defendant against the plaintiff to be taxed.